IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Evanston Insurance Company, | C/A No. 3:13-cv-00655-JFA |
| Plaintiff, | |
| vs. | |
| | **AMENDED ORDER** |
| Vickie Watts, as Personal Representative of the Estate of Dorothy Jones; Meredith Wofford; Estate of Dora Elizabeth B. Hanna, by and through her Personal Representative, King C. Hanna, Jr., and on behalf of a class of individuals similarly situated; LaFay Walker, as Personal Representative of the Estate of Martha Sellers Blackwelder; Amanda Curtis; Preston Wayne Chandler, as Personal Representative of the Estate of Mildred Louise Chandler; Patty Larimore, as Personal Representative of the Estate of Annie Larimore; the Estate of Clarice Potter; Agape Senior, LLC; Agape Senior Primary Care, Inc.; Agape Nursing & Rehabilitation, Inc.; Agape Community Hospice, Inc.; Carolinas Community Hospice, Inc.; Scott Middleton; Floyd Cribbs; Kezia Nixon; and Jackson & Coker Locum Tenes, LLC d/b/a Jackson and Coker, | |
| Defendants. | |

## I.    INTRODUCTION

This matter comes before the court on cross motions for summary judgment filed by

Plaintiff, Evanston Insurance Company, ("Evanston") and Defendants Agape Senior Primary

Care ("ASPC"), Floyd Cribbs, Kezia Nixon, and Scott Middleton ("collectively Agape Defendants").

In 2013, Evanston brought this declaratory judgment action seeking a determination as to whether it has a duty to defend and/or indemnify the parties who have been named in underlying lawsuits (both filed and unfiled) against the Agape Defendants.[1] Evanston seeks a summary judgment ruling that the policy does not afford coverage for the underlying suits and that it is not required to defend or indemnify. Conversely, the Agape Defendants seek a ruling that the policy does afford coverage for the claims made in the underlying actions.

## II.    BACKGROUND FACTS

The issue of disputed coverage arises from an unusual set of circumstances. Agape is a business that employs and deploys physicians and nurse practitioners to nursing homes, rehabilitation centers, freestanding offices, and assisted living facilities. (DiNino Dep. 11:25-12:7, 14:22-15:3). Prior to issuing the policy involved in the current suit, Evanston provided ASPC[2] with a policy of professional liability insurance, policy number MM-820866. While this policy was in place Earnest Addo ("Addo") assumed the identity of Dr. Arthur Kennedy ("Kennedy"), obtained employment with Agape, and sought insurance coverage with Evanston under ASPC's existing policy. (ECF No. 199-8). In February of 2012, Addo filled out an application representing that he was Arthur Kennedy, a South Carolina licensed medical physician. (Id.). After Evanston's receipt of Addo/"Kennedy's" application, it issued Endorsement 10-10 adding Arthur Kennedy, M.D. to the policy. (ECF No. 119-9). Thereafter, on July 15, 2012, the policy was renewed by ASPC. (ECF No. 119-10). All Named Insureds, including Addo/"Kennedy," submitted new applications for insurance coverage. (Id.). As a

---

[1] Some of the parties in the underlying cases have been joined as defendants in the instant suit.
[2] This policy of insurance applies not only to ASPC, but to other specific Named Insureds under the policy. This coverage for other Named Insureds is discussed in detail, *infra*.

result of this renewal, Evanston issued policy MM-822351, which included Arthur Kennedy as a Named Insured. (ECF No. 119-11).  In August of 2012, Addo's true identity was discovered by the Lexington County Sheriff's Department, and Addo was later indicted on federal charges of identity theft.  (DiNino Dep. 29:2-30:20; ECF No. 119-26).

In the wake of Addo's true identity coming to light, several lawsuits were filed against Agape and other Named Insureds. Some former patients also alerted Agape to their intention to file suit. These suits and potential claims assert causes of action for medical malpractice and various negligence-based claims. (ECF Nos. 119-13, 119-16, 119-17, 119-18, 119-19, 119-21, 119-22, and 119-23).

The instant suit was filed by Evanston in Federal Court on March 11, 2013, seeking a declaratory judgment as to the insurance coverage under its policy for the Agape Defendants. (ECF No. 1).

During the pendency of this case, the parties stipulated to several facts:

1. Earnest Osei Addo ("Addo") is not listed as a Named Insured under policy no. MM-822351 ("the Policy.").

2. Addo assumed the identity of and posed as Arthur Kobina Kennedy, M.D. ("Dr. Kennedy").

3. Addo posed as a medical doctor, even though he was not a licensed South Carolina physician.

4. Neither the Hanna Action nor any of the claims by patients or residents of Agape stemming from Addo's impersonation of Dr. Kennedy allege any wrongful conduct by Dr. Kennedy.

(ECF No. 80)

### III.    LEGAL STANDARD

Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The Act, however, gives the court the discretion to decline issuing the judgment. *Aetna Cas. & Sur. Co. v. Ind–Com Elec. Co.,* 139 F.3d 419, 421 (4th Cir.1998); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (The Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."). "When a useful purpose will not be served, statute and practice have established the rule that the judgment may be refused when it is not necessary or proper at the time under all the circumstances." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937).

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden and a properly supported motion is before the court, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e); *Celotex*,

477 U.S. at 323. All inferences must be viewed in a light most favorable to the non-moving party, but he "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## IV.  DISCUSSION

### A. *Evanston Policy Coverages*

The policy issued to ASPC by Evanston is a claims-made[3] policy providing professional liability coverage. The policy has two types of coverage: Coverage A and Coverage B[4].   The policy provides in pertinent part:

> **Coverage A Individual Professional Liability**: "because of Malpractice or Personal Injury, sustained by a patient and committed by the Coverage A Named Insured, or by any person for whose Malpractice or Personal Injury the Coverage A Named Insured is legally responsible." (ECF No. 119-11, p. 17).

> **Coverage B Association, Corporation or Partnership Liability**: "because of Malpractice or Personal Injury, sustained by a patient and committed by any person for whom the Coverage B Named Insured is legally responsible, arising out of the practice of medicine." (ECF No. 119-11, p.17-18).

### B. *Addo's Material Misrepresentations and Whether the Policy is Viod Ab Initio*

The insurer bears the burden of establishing by clear and convincing evidence that an insured has made a material misrepresentation, such that the insurance policy should be voided and coverage denied. "In order to vitiate a policy on the ground of fraudulent misrepresentation, it is necessary that the insurer show not only the falsity of the statement challenged, but also that the falsity was known to the applicant, was material to the risk, made with the intent to defraud the insurer, and relied upon by the insurer in issuing the policy." *Strickland v. Prudential Ins. Co. of Am.*, 278 S.C. 82, 86-87, 292 S.E.2d 301, 304 (1982), (citing *Atlantic Life Insurance Company v. Beckham*, 240 S.C. 450, 126 S.E.2d 342 (1962); *Metropolitan Life Insurance*

---

[3] A claims-made policy provides coverage for claims that are first made against the insured during the policy period or during the extended reporting period, if exercised.
[4] The relevant exclusions and endorsements of the policy are discussed in detail, *infra*.

*Company v. Bates*, 213 S.C. 269, 49 S.E.2d 201 (1948); *Cain v. United Insurance Company*, 232 S.C. 397, 102 S.E.2d 360 (1958)).

In policies involving co-insureds, South Carolina has held that where an insurance policy creates several, individual obligations among co-insureds, criminal acts by one co-insured does not bar the innocent co-insureds from recovering under the policy. *McCracken v. Government Employees, Ins. Co.*, 284 S.C. 66, 69, 325 S.E.2d 62, 64 (1985) (holding that in the absence of any statute or specific policy language denying coverage to a co-insured for the arson of another co-insured, the innocent co-insured shall be entitled to recover his or her share of the insurance proceeds).

Evanston argues that Addo made serious misrepresentations when he assumed the identity of Kennedy and posed as a licensed medical doctor in his application for insurance coverage.  Agape Defendants also acknowledge that Addo's representations to Evanston were fraudulent.  (ECF 131-1, p. 4).  As stated previously, the parties have stipulated that Addo assumed the identity of Kennedy and posed as a medical doctor even though he was not a licensed South Carolina physician. (ECF No. 80) Accordingly, there is no factual dispute that Addo's representations in his application to Evanston regarding his credentials as a physician were false.  Further, the facts bear out, the false representations were known to Addo at the time he made them, and Addo intended for Evanston to rely on the representations. Therefore, Evanston has satisfied the elements of material misrepresentation with regard to Addo's application for insurance and the Court concludes that such misrepresentations clearly allow Evanston to void coverage as to Addo/"Kennedy."

In light of Addo's conduct, the major dispute between the parties appears to be whether Addo's misrepresentations can be imputed onto the Agape Defendants, such that the entire

6

policy of insurance is void under a theory of material misrepresentation. Whether the misrepresentations of Addo apply to the entire policy hinges on two factors: (1) whether the Agape Defendants were "applicants" for purposes of Addo/"Kennedy's" insurance and had knowledge of the misrepresentations made by Addo and (2) whether the named insureds under the policy are co-insureds.

      *1. The Applicant and Agape's Knowledge of Misrepresentations*

Evanston asserts Addo's misrepresentations in his application not only void his coverage, but also void the entire policy of insurance for all named-insureds. Agape Defendants counter that they had no knowledge of the misrepresentations when they were made by Addo. In order to prevail under South Carolina law and void the policy based on a material misrepresentation, Evanston must show that the *applicant* not only made the misrepresentation, but that the misrepresentation was *known by the applicant* at the time it was made. *Strickland,* 278 S.C. at 86-87, 292 S.E.2d at 304.

The insurance documentation presented to the Court shows Addo was the applicant, not Agape. Separate applications for insurance coverage were made by Addo/"Kennedy" and Agape Defendants. (ECF No. 119-10). Initially, Addo/"Kennedy" submitted his own Application for Physicians & Surgeons Professional Liability Insurance to Evanston requesting that he be added to the insurance policy. (ECF No. 119-8).

The application requires the applicant to warrant that "the information contained herein is true, and that it shall be the basis of the policy and deemed incorporated therein, should the Company evidence its acceptance of this application by issuance of a policy." (ECF No. 119-8, p. 9). The full name of the applicant is listed as "Arthur Robina Kennedy." (Id. at p. 2). The only applicant who signed the application was "Arthur Kennedy." (Id. at p. 9). After receiving

7

Addo/"Kennedy's" application, Evanston added "Dr. Kennedy" to the policy and charged Agape an additional premium for this coverage. (ECF 131-1, p. 4).

Similar information was included in Addo/"Kennedy's" renewal application, and the same warranties and acknowledgments were signed individually by Addo/"Kennedy." (ECF 119-10, p. 28-30). Every other physician was required to submit an individual application and warrant that the information contained in their individual application was true and accurate. (ECF 119-10, p. 11-45).  Agape Defendants assert they were unaware of Addo's true identity until they were contacted by the Lexington County Sheriff's Department. (ECF 131-2).  Notably, Evanston does not present any evidence to the contrary. Furthermore, in its own brief, Evanston states, "Addo, not agape [sic] is the applicant." (ECF 139, p. 20).

Based on these circumstances, the Court concludes that Addo was the "applicant" for purposes of his insurance coverage.  Evanston has not demonstrated ASPC was the applicant for purposes of Addo/"Kennedy's" insurance coverage.  Even to the extent ASPC can be deemed to be the "applicant" for purposes of Addo's insurance, Evanston has not presented any evidence that the Agape Defendants knew of the misrepresentations made by Addo. The Court notes that all factual misrepresentations Evanston relies on as a basis to void the entire policy and bar coverage are contained only in the applications submitted by Addo.  Evanston has failed to present facts that evidence any knowledge on the part of the Agape Defendants or the other named insureds of these misrepresentations. Evanston even admits in its brief that "Addo intended to deceive . . ." (ECF 139, p. 19).  However, similar allegations as to the Agape Defendants are notably absent.

Therefore, the argument that any knowledge of Addo can be imputed to Agape is attenuated at best and does not meet the clear and convincing standard of proof required to void the policy *in toto*.

### 2.  *The Policy Has Multiple Named Co-Insureds*

Evanston's ability to void the entire insurance policy based on Addo's misrepresentations is also hindered if the policy is one that affords coverage to multiple co-insureds.  Evanston argues it may rescind the policy based on Addo's misrepresentations, thus barring other insureds from retaining coverage. Agape Defendants insist the policy contains several and independent obligations to each named insured.

In determining whether the policy, as written, provides coverage for co-insureds, the court must attempt to interpret the policy in accordance with the parties' intention.  "One cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties." *S. Carolina Dep't of Transp. v. M & T Enterprises of Mt. Pleasant, LLC*, 379 S.C. 645, 655, 667 S.E.2d 7, 12 (Ct. App. 2008) (citing *Chan v. Thompson,* 302 S.C. 285, 289, 395 S.E.2d 731, 734 (Ct.App.1990)).

It appears to the Court, the applications for insurance and provisions of the policy evidence an intention to provide coverage for multiple co-insureds.  Each individual doctor submitted his or her own application to Evanston for insurance coverage. (ECF 119-10 p. 11-45). ASPC[5] also submitted its own application for coverage under the policy. (ECF 119-10, p. 2-10). Endorsement 6 to the policy, Schedule of Additional Coverage A Named Insureds, lists twelve individual physicians, including "Arthur Kennedy" as insureds. (ECF 119-11, p. 11-12).  The

---

[5] The actual entity listed on the Evanston Application is Agape Primary Care, Inc.; however, this appears to be a scrivener's error, as the policy lists Agape Senior Primary Care, Inc. as a named insured. The parties have not made mention of this discrepancy and there is no dispute that Agape Senior Primary Care, Inc. is the correct named insured under the policy.

9

Endorsement refers to "each" insured and lists different effective dates and expiration dates of coverage for each named insured. (Id.). The Endorsement further provides that "*each* such Named Physician . . . shall be a Coverage A Named Insured solely with respect the any Claim made against such named Physician." (Id.).

Additionally, Endorsement 7 to the policy, Amendment of Definition of Insured - Coverage B, lists nineteen nurse practitioners as insureds. (ECF 119-11, p. 13-14). This Endorsement also refers to "each" insured and lists different effective dates and expiration dates of coverage for each named insured. (Id.) It likewise provides that "each such Coverage B Insured shall be a Coverage B Insured solely with respect to any Claim made against such Coverage B Insured." (Id.).

Moreover, Evanston does not cite to any provision within the policy itself that prevents a co-insured construction of the policy. In light of the manner in which coverage was sought via individual applications, the Endorsements issued that specifically amend the policy to list specific insureds, and the lack of other provisions indicating any intent to the contrary, it appears the parties intended to make each Named Insured listed on the policy a co-insured.

In further support of their position, Agape Defendants also contend that because the Evanston policy involves multiple co-insureds it allows for coverage for other Named Insureds, despite Addo's misrepresentations. In support of this position, Agape Defendants have cited to a South Carolina case involving a determination as to the availability of insurance proceeds for an innocent spouse whose husband burned down the marital residence. In that case, the court held, "in the absence of any statute or specific policy language denying coverage to a co-insured for the arson of another co-insured, the innocent co-insured shall be entitled to recover his or her share of the insurance proceeds." *McCracken v. Government Employees Ins. Co.*, 284 S.C. 66,

10

69, 325 S.E.2d 62, 64 (1985). Evanston argues such a doctrine does not apply to misrepresentations made in an application for insurance.  While South Carolina courts do not appear to have addressed the applicability of the innocent co-insured doctrine beyond the arson context, a review of decisions from other jurisdictions is instructional to the Court.

Absent a specific policy provisions barring recovery, the Eighth Circuit reached a similar result when analyzing the innocent co-insured doctrine in the context of an arson case. *Haynes v. Hanover*, 783 F.2d 136, 317 (8th Cir. 1986) (holding "misconduct voids only the wrongdoer's interest in the insurance policy and does not operate to defeat separate interests of an innocent co-insured.") Additionally, Florida has extended its innocent co-insured doctrine to a case involving recovery under a vessel policy. *Overston v. Progressive Ins. Co.*, 585 So.2d 445 (Fla. 4th DCA 1991) (holding "Florida's doctrine of innocent co-insured provides that an innocent insured may recover under an insurance policy even where the loss was caused by another co-insured's intentional acts unless the insurance policy at issue makes clear that the policy at issue provides for joint coverage rather than several coverage.")

Other jurisdictions have also extended the innocent co-insured doctrine to cases involving misrepresentation by one co-insured. These jurisdictions have found that the innocent co-insured may still recover under the policy, despite the fraudulent conduct of the other co-insured. *Mercantile Tr. Co. v. New York Underwriters Co.*, 37 F.2d 502 (7th Cir. 1967); *Fireman's Fund Ins. Co. v. Knutsen*, 132 Vt. 383 (1974) (where wife was permitted to recover under the insurance policy because she did not have knowledge of the false statements made by husband).

However, it appears when presented with a fraud provision contained in the policy itself, courts are unwilling to apply the innocent co-insured doctrine. In such circumstances, the policy has made clear that recovery is barred for all insureds if any insured makes a misrepresentation

or acts fraudulently in procuring a loss under the policy. *K&W Builders, Inc. v. Merchants & Business Men Mutual Ins. Co.*, 495, S.E.2d 473, 477 (Va. 1998) (holding under the fraud provision contained in the insurance contract, the fraudulent act of an insured voids the contract, even with respect to an innocent co-insured.) South Carolina has held similarly in an unpublished opinion issued by the Court of Appeals. In that case the court held that "an innocent co-insured was barred from recovery under the insurance policy because that policy had specific language denying recovery if that insured or any other insured caused or procured the loss for the purpose of obtaining insurance benefits." *South Carolina Farm Bureau Mut. Ins. Co. v. Kelly*, 345 S.C. 232 (2001) (citing *State Farm Fire & Casualty Co. v. Mitchell*, Op. No. 98-UP-100 (S.C.Ct.App., filed Feb. 19, 1998)).

Here, in Evanston's contract, there is no specific fraud provision contained in the insurance policy. While Evanston points to a provision in the policy which informs the insureds that each applicant's representations made in their respective application become part of the policy, there is no explicit language barring coverage for all insureds based on the fraud or misrepresentation of a co-insured. The Court is not permitted to rewrite the policy and create a limitation on coverage that does not exist. As the South Carolina Supreme Court aptly stated, "We are without authority to alter a contract by construction or to make new contracts for the parties. Our duty is limited to the interpretation of the contract made by the parties themselves, regardless of its wisdom or folly, apparent unreasonableness, or failure to guard their rights carefully." *C.A.N. Enterprises, Inc. v. S. Carolina Health & Human Servs. Fin. Comm'n*, 296 S.C. 373, 378, 373 S.E.2d 584, 587 (1988) (citing *Gilstrap v. Culpepper,* 283 S.C. 83, 320 S.E.2d 445 (1984)).

Accordingly, based on the contract itself, the Court agrees with Agape and finds that the other named co-insureds should not be barred from obtaining coverage under the policy.

### C.    Coverage A

Under the policy, Coverage A provides individual professional liability insurance coverage for claims alleging malpractice and personal injury. Endorsement 6, Schedule of Additional Coverage A Named Insureds lists twelve (12) individual physicians who qualify as Named Insureds for purposes of Coverage A. One of these individuals is listed as "Arthur K. Kennedy, M.D." (ECF 119-11, p. 11-12).

#### 1.    The Coverage A Named Insureds

Evanston argues that it is not obligated to provide coverage for any claims arising out of Addo's impersonation of Kennedy because Addo is not a Coverage A Named Insured, and that no Coverage A is available for any of the underlying lawsuits because no other Coverage A Named Insured is responsible for Addo's actions.

As to Addo, Agape Defendants essentially agree with Evanston's position, in that the majority of their argument focuses on the other Coverage A Named Insureds (other physicians) and their entitlement to coverage. As to coverage for Addo, the parties have already stipulated that Addo is not a Named Insured under the policy. (ECF 80).  Further, the parties have stipulated that Addo assumed the identity of Dr. Kennedy, and Dr. Kennedy is not a named defendant in any of the underlying suits. (Id.) Therefore, as to Addo, there is no Coverage A insurance because he is not named in the policy. As to Dr. Kennedy, no claim has been filed against him such that coverage under the policy would be triggered. However, even if such a claim had been made against Dr. Kennedy, no Coverage A insurance exists because Addo was "Dr. Kennedy."

However, Coverage A is still available for the other Named Insureds under the policy. Evanston has already stated if the entire policy is not void *ab initio,* it admits there are some claims and allegations in the underlying suits that would be covered, and that it was only seeking a determination that Addo is not a Coverage A Named Insured. (ECF 139, p. 22).

### 2. *Policy Exclusions*

The policy contains several exclusions that Evanston argues void coverage for certain claims. The two applicable exclusions related to Coverage A which are raised by Evanston are:

> **_Exclusion A_**- bars coverage for any Malpractice or Personal Injury committed in violation of the any law or ordinance; to any Claim based upon or arising out of any dishonest, fraudulent, criminal, malicious, knowingly, wrongful, deliberate, or intentional acts, errors or omissions committed by or at the direction of the Insured.

> **_Exclusion B_**- bars coverage for any Malpractice or Personal injury that happens while the Insured's license or certificate to practice the Insured's profession is suspended, surrendered, revoked, expired, terminated, or otherwise not in effect.

Evanston argues Exclusion A bars all coverage for any claims arising from Addo's impersonation of Kennedy. The Agape Defendants argue the exclusion applies only to Addo/"Kennedy" and does not bar all coverage for the other named insureds on the policy. Similarly, to Exclusion A, Evanston argues that Exclusion B bars coverage for all underlying suits, to the extent they are based on Addo's treatment of patients because there was not a license or certificate in effect. Agape Defendants argue again that this exclusion does not bar coverage for all named insureds under the policy.

As an initial matter, any coverage for Addo/"Kennedy" is void based on the material misrepresentations made to Evanston in the application for insurance. *See* Section B, *Supra.* Furthermore, these exclusions are inapplicable to Addo because Addo is not a named insured under the policy. (ECF 80). The named insured under the policy is Arthur Kennedy. However,

the parties have stipulated, "neither the Hanna Action [Class Action] nor any of the claims by patients or residents of Agape stemming from Addo's impersonation of Dr. Kennedy allege any wrongful conduct by Dr. Kennedy." (ECF 80). Therefore, the issue of whether these exclusions would apply to Dr. Kennedy, the named insured, is moot. "[F]ederal courts may not give opinions upon moot questions or abstract propositions." *Calderon v. Moore*, 518 U.S. 149, 150, 116 S. Ct. 2066, 2067, 135 L. Ed. 2d 453 (1996).

Accordingly, Addo/"Kennedy" is not entitled to Coverage A under the policy. However, all other Coverage A Named Insureds are entitled to coverage, to the extent a claim exists that would trigger their coverage under the policy.

### D.  Coverage B

Under the policy, Coverage B provides the "Association, Corporation or Partnership" liability coverage for claims due to "Malpractice or Personal Injury, sustained by a patient and committed by any person for whom the Coverage B Named Insured is legally responsible, arising out of the practice of medicine." (ECF No. 119-11, p. 17-18).   Additionally, the policy contains two endorsements related to Coverage B.

Endorsement 7 (Amendment of Definition of Insured- Coverage B) of the policy amends the definition of a Coverage B Named Insured to include both (1) any employee or volunteer worker of the Coverage B Named Insured and (2) each person listed on the schedule incorporated in the Endorsement itself. (ECF 119-11, p.13-14). This list contains the names of nineteen (19) nurse practitioners. The Endorsement further provides that such coverage is only available when the additional Named Insureds are acting within the scope of their duties on behalf of the Coverage B Named Insured.

15

Endorsement 5 (Restriction of Coverage B – Specified Coverage A Named Insureds) of the policy places a restriction on Coverage B and states, "the coverage provided under Coverage B, Association, Corporation, or Partnership Liability applies solely to Claims arising from professional services rendered or that should have been rendered by Coverage A Named Insured Physicians while acting within the scope of that person's duties on behalf of the Coverage B Named Insured." (ECF 119-11, p. 10).

     *1.  The Coverage B Named Insureds*

Evanston argues that Coverage B only provides coverage for those actions constituting vicarious liability and do not insure Agape Defendants from their own negligence (e.g. negligent hiring, negligent retention). Additionally, Evanston argues that Endorsement 5 restricts coverage under Coverage B to only those physicians listed as Coverage A Named Insureds. Therefore, there is no coverage for Agape Defendants for any acts committed by Addo because he was not a Coverage A Named insured on the policy. Furthermore, ASPC is the only Agape entity entitled to coverage under the policy because it is the only association, corporation or partnership listed as a Coverage B Named Insured in the policy.

Agape Defendants contend the restriction found in Endorsement 5 only restricts coverage for the Coverage B Named Insured, ASPC, as it was designed to limit the potential exposure of Evanston for claims made against ASPC regarding actions or omissions that occurred while the Coverage A Named Insured Physician was not performing professional duties on behalf of ASPC. In the alternative, Agape Defendants argue Endorsement 7, which expands coverage by the addition of Coverage B Named Insureds, and Endorsement 5, which restricts coverage by limiting the Named Insureds to whom Coverage B applies, creates an ambiguity in the policy

that must be construed in the manner most advantageous to the insureds, i.e. in favor of coverage.

Agape Defendants also assert that coverage exists for Addo's actions. ASPC is in the business of employing and deploying physicians and nurse practitioners to nursing homes and assisted living facilities. ASPC argues it did not knowingly deploy Addo as a physician; thus, all of the services that were performed by Addo should have been performed by a Coverage A. Named Insured Physician.

### a. *Coverage B Endorsements are Ambiguous*

South Carolina courts have routinely held, "[w]hether the language of a contract is ambiguous is a question of law for the court. A contract is ambiguous when the terms of the contract are reasonably susceptible to more than one interpretation. The uncertainty in interpretation can arise from the words of the instrument, or in the application of the words to the object they describe. Whether a contract is ambiguous must be determined from the entire contract and not from any isolated clause of the agreement." *Pee Dee Stores, Inc. v. Doyle*, 381 S.C. 234, 242, 672 S.E.2d 799, 803 (Ct. App. 2009) (internal citations omitted).

"Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer." *USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 655, 661 S.E.2d 791, 797 (2008) (citing *Diamond State Ins. Co. v. Homestead Indus., Inc.,* 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995)). "Where the words of an insurance policy are capable of two reasonable interpretations, that construction will be adopted which is most favorable to the insured." *Greenville Cnty. v. Ins. Reserve Fund, a Div. of S. Carolina Budget & Control Bd.*, 313 S.C. 546, 547-48, 443 S.E.2d 552, 553 (1994) (citing *McPherson v. Michigan Mutual Insurance Co.,* 310 S.C. 316, 426 S.E.2d 770, 771 (1993)).

Provisions related to the Named Insureds under Coverage B and the Endorsements affecting Coverage B are susceptible to more than one interpretation. The policy defines "The Insured" for purposes of Coverage B as:

> The unqualified word "insured." either in the singular or plural, means:
>
> ***
>
> B. under Coverage B Association, Corporation or Partnership Liability, the Coverage B Insured which means:
>
> 1. the Coverage B Named Insured which is herein defined as the association, corporation or partnership if any is stated in item 1 (b) of the Declarations;
> 2. any member, stockholder, or partner the Coverage B Named Insured with respect to Malpractice or others, provided that no member, stockholder or partner shall be an insured under this paragraph B with respect to liability for his personal acts of a professional nature;
>
> 3. any Employee of Volunteer Worker of the Coverage B named Insures, but only while acting within the scope of that person's duties on behalf of the Coverage B Name Insured;
>
> 4. the heirs, executors, administrators, assigns and legal representatives of each insured in Items B 1-3 above, in the event of his death, incapacity or bankruptcy.

(ECF 119-11, p. 17).

As to Item B 1, ASPC is the Coverage B Named Insured under the policy because it is the entity listed in Item 1 (b) of the Declarations Page. (ECF 119-11, p. 3). Endorsement 7 (Amendment of Definition of Insured - Coverage B) seeks to modify the list of named insureds for purposes Item B 3. Specifically, it replaces section "The Insured Item B 3" of the policy and expands the definition of Coverage B Named Insureds to include employees and volunteer workers as well as the nineteen specific individuals listed in the schedule to Endorsement 7. Per the Endorsement, Coverage B is extended to claims made against these individuals, "but only while acting within the scope of that person's duties on behalf of the Coverage B Named Insured." (ECF 119-11, p.13-14).

Endorsement 5 (Restriction of Coverage B - Specified Coverage A Named Insured(s)) states in whole, "In consideration of the premium paid, it is hereby understood and agreed that the coverage provided under Coverage B, Association, Corporation or Partnership Liability, applies solely to Claims arising from professional services rendered or that should have been rendered by Coverage A Named Insured Physicians while acting within the scope of that person's duties on behalf of the Coverage B Named Insured." (ECF 199-11, p.10).

The Court believes the interplay between Endorsement 5 and Endorsement 7 and their effect on the coverage provided under Coverage B are susceptible to more than one interpretation: (1) a limitation on Named Insured coverage or (2) a limitation of coverage for vicarious liability of ASPC. First, when read together, the Endorsements can be interpreted to be in direct contravention with one another as to who the Named Insureds are under Coverage B. While Endorsement 7 appears to expand the Named Insureds under Coverage B, Endorsement 5 appears to limit the Named Insureds under Coverage B to only the Coverage A Named Insured Physicians. In other words, despite the employees, volunteers, and other specifically named nurse practitioners listed in Endorsement 7, Endorsement 5 can be seen as a limitation that actually only affords coverage to the specific physicians listed as Named Insureds under Coverage A.

Second, Endorsement 5 may be read as a stand-alone provision that merely limits coverage to ASPC. The endorsement may be interpreted to mean that any coverage afforded to ASPC under Coverage B will only apply to acts/services performed *within the scope of the duties* of the Coverage A Named Insureds. Thus, a limitation results, such that a Coverage A Named Physician must be acting within the scope of employment for Coverage B to apply to a claim. This limitation would be similar to that of other Coverage B Named Insureds listed in

Endorsement 7 ("within the scope of duties"), but would not render the coverage provided in Endorsement 7 void.

Since the court is tasked with resolving any ambiguities in the policy in favor of coverage, the second interpretation of the relationship between Endorsement 5 and Endorsement 7 affords the greatest amount of coverage to the Named Insureds. Therefore, Endorsement 5 only creates a limitation on the coverage provided to ASPC for the vicarious acts of the Coverage A Named Insureds. Endorsement 5 does not limit coverage under Coverage B to only the Coverage A Named Insureds. All of the individuals listed on Endorsement 7, including the specific nurse practitioners, are also Named Insureds for purposes of Coverage B.[6]

### b.  *Endorsement 5 Restriction- "should have been" Clause*

Additionally, the parties disagree on the meaning of the "should have been" clause contained in Endorsement 5 (Restriction of Coverage). The clause provides coverage "solely to Claims arising from professional *services rendered or that should have been rendered* by Coverage A Named Insured Physicians."  Evanston asserts this clause is a standard acts and omissions clause that refers to instances in which a claim results because a Named Insured has either acted or failed to act. Agape Defendants interpret the clause to mean any acts that should have been performed by a Coverage A Named Insured, but were performed by someone else, would be covered under the policy.

When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used. *Auto-Owners Ins. Co. v. Carl Brazell Builders, Inc.*, 356 S.C. 156, 162, 588 S.E.2d 112, 115 (2003). All of the policy provisions should be considered, "and

---

[6] Evanston has conceded that if the entire policy is not void *ab initio* then "other Agape employees would be 'insureds' under Coverage B." However, it is unclear as to which "employees" Evanston is referring (i.e. additional Coverage B Insureds listed in Endorsement 7, the Coverage A Named Insured Physicians, or both). (ECF 139, p. 23).

one may not, by pointing out a single sentence or clause, create an ambiguity." *Stewart v. State Farm Mut. Auto. Ins. Co.*, 341 S.C. 143, 150-51, 533 S.E.2d 597, 601 (Ct. App. 2000) (citing *Yarborough v. Phoenix Mut. Life Ins. Co.,* 266 S.C. 584, 592, 225 S.E.2d 344, 348 (1976). "A clause in an insurance policy will not be read in isolation." *Beaufort Cnty. Sch. Dist. v. United Nat. Ins. Co.*, 392 S.C. 506, 518, 709 S.E.2d 85, 91 (Ct. App. 2011).

When read in its entirety, it is clear this provision is referring to coverage for any acts or omissions of the Named Insureds. To give the clause the meaning Agape Defendants suggest would render the insurance contract a nullity, as Evanston would become the insurer of both named insureds under the policy and any other individual who provides care that should have been rendered by the named insureds.  Such a tortured interpretation would undermine the very purpose of the contract of insurance and expand the obligations of Evanston. "It is settled that an insurance policy is a contract between the insured and the insurance company." *Estate of Revis by Revis v. Revis*, 326 S.C. 470, 477, 484 S.E.2d 112, 116 (Ct. App. 1997).  "An insurer's obligation under a policy of insurance is defined by the terms of the policy itself, and cannot be enlarged by judicial construction." *Stewart v. State Farm Mut. Auto. Ins. Co.,* 341 S.C. 143, 151, 533 S.E.2d 597, 601 (Ct. App. 2000).

Given the foregoing, the Court believes the policy provides ASPC with coverage for the acts and omissions of all Coverage A Named Insureds and Coverage B Named Insureds, to the extent such individuals were acting within the scope of their duties on behalf of ASPC.[7]

---

[7] In accordance with the issues presented by the parties at the status hearing on October 21, 2014, the Court makes the following clarification: The policy provides ASPC with coverage for all vicarious acts of Coverage A Named Insureds and Coverage B Named Insureds; however, the policy does not provide coverage to ASPC for any of its own negligent acts.

### E.    *Medical Director Exclusion*

The policy also contains an exclusion that seeks to limit coverage for administrative acts performed by ASPC. This exclusion is known as the Medical Director Exclusion.

Medical Director Exclusion - (Endorsement 4) states the policy does not apply to "any claim based upon or arising out of any administrative acts rendered or that should have been rendered as Medical Director for West Columbia Nursing Home, Agape Hospice and AMS." (ECF No. 119-11, p. 9).

Evanston argues the Medical Director Exclusion bars coverage for all claims against Agape related to "administrative acts" that were rendered or should have been rendered as medical director for West Columbia Nursing Home or Agape Hospice.[8]  Agape Defendants counter with the position that Evanston is asking the court to grant summary judgment as to hypothetical claims because none of the underlying lawsuits have alleged that Addo was hired, supervised or retained by anyone other than ASPC.

"A declaratory judgment action must involve an actual, justiciable controversy. A justiciable controversy is a real and substantial controversy which is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract dispute. *S. Bank & Trust Co. v. Harrison Sales Co.*, 285 S.C. 50, 51-52, 328 S.E.2d 66, 67 (1985).

The applicability of the Medical Director Exclusion is only ripe for the Court's review as to one of the underlying cases, Estate of Larimore v. Agape ("Larimore").[9]  In that suit, Plaintiff alleges Dr. Floyd Cribbs (a Coverage A Named Insured under the policy) was acting as medical director for Carolinas Community Hospice, d/b/a Agape Hospice. (ECF 119-18, p. 4). The

---

[8] The Exclusion also mentions "AMS" (presumably, Agape Management Services, Inc.) as another entity that medical director services may be rendered on behalf of; however, the parties do not address this entity in their arguments.

[9] None of the other suits appear to make claims related to any Named Insured acting as a Medical Director.

complaint further alleges that Dr. Cribbs was "acting as supervising physician over nurse practitioners employed by Agape Senior Primary Care, Inc., including Kezia Nixon and Tonja Gantt (Coverage B Named Insureds)." (Id.). This is the only allegation contained in the complaint that discusses the specific action Dr. Cribbs took as "Medical Director." The complaint also alleges that Dr. Cribbs provided medical care to the deceased patient. (Id.).

In general, "rules of construction require clauses of exclusion to be narrowly interpreted, and clauses of inclusion to be broadly construed. This rule of construction inures to the benefit of the insured." McPherson By & Through McPherson v. Michigan Mut. Ins. Co., 310 S.C. 316, 319, 426 S.E.2d 770, 771 (1993) (citing *Buddin v. Nationwide Mutual Ins. Co.,* 250 S.C. 332, 337, 157 S.E.2d 633, 635 (1967)).  "Policies are construed in favor of coverage, and exclusions in an insurance policy are construed against the insurer." *Buddin.,* 250 S.C. at 337, 157 S.E.2d at 635.

The narrowest interpretation of the exclusion turns on the phrase "rendered *as* Medical Director for [one of the three entities listed]." (ECF No. 119-11, p. 9). In other words, in order for the exclusion to apply and bar coverage, the claim would have to allege that ASPC or another named insured under the policy was acting as medical director for West Columbia Nursing Home, Agape Hospice, or AMS when the acts were performed.

Under this interpretation, coverage would not be barred for administrative acts performed by ASPC or any other named insured while *not* acting in a medical director capacity for one of the three named entities (i.e. administrative acts performed by ASPC acting as its own medical director, not that of one of the named entities in the exclusion, would be covered). This narrow construction of the exclusion would provide coverage for negligent acts, as long as those acts were not performed in the capacity of medical director on behalf of the named entities in the

exclusion.  In the Larimore suit, the Complaint alleges that Dr. Cribbs was acting as a medical director for Agape Hospice. In that regard, the claim appears to trigger the Medical Director Exclusion because a Named Insured is acting as medical director for one of the three entities identified in the exclusion (i.e. Agape Hospice).

However, in determining the applicability of the exclusion to this claim, the term "administrative acts" must be defined. Evanston concedes that the policy itself does not provide a definition of the term. Agape Defendants do not address the meaning of "administrative acts" because their entire argument rests on the proposition that claims have not been made yet which would trigger an analysis under the exclusion.  Typically, where a term is not defined in an insurance policy, a court must define the term according to the usual understanding of the term's significance to the ordinary person. *South Carolina Farm Bureau Mut. Ins. Co. v. Durham,* 380 S.C. 506, 671 S.E.2d 610 (2009). "Courts interpret insurance policy language in accordance with its plain, ordinary, and popular meaning, except with technical language or where the context requires another meaning." *M & M Corp. of S. Carolina v. Auto-Owners Ins. Co.,* 390 S.C. 255, 259, 701 S.E.2d 33, 35 (2010).

Evanston argues "administrative" is generally defined as "of or relating to administration," and that "administration" is defined as "the activities relating to a company."  It further opines that activities such as hiring, retention, and supervision of physicians relate to Agape's business and should be barred from coverage.  Likewise, even the definition of "administrative act" according to Black's Law Dictionary is "an act made in a management capacity, especially an act made outside the actor's usual field." ACT, Black's Law Dictionary (9th ed. 2009).  In light of these definitions, whether coverage exists for the Larimore suit depends on whether the alleged actions by Dr. Cribbs are "administrative acts."  The Larimore

action alleges Dr. Cribbs was acting as a supervising physician over two other nurse practitioners. It would appear this supervision would qualify as an activity made in a management capacity.

However, a slight hiccup exists related to the applicability of this exclusion to the Larimore suit: the "Insuring Agreements" section of the policy. This section states in pertinent part that Evanston will pay for claims "under Coverage A Individual Professional Liability: because of Malpractice or Personal Injury, sustained by a patient and committed by the Coverage A Named Insured, *or by any person for whose Malpractice or Personal Injury the Coverage A Named Insured is legally responsible . . .*" (ECF 119-11, p. 17). To the extent the policy appears to cover the acts of individuals for whom the Coverage A Named Insured is responsible (i.e. the acts or omissions of nurses and others that can result in a claim against the Coverage A Named Insured), then an ambiguity exists, as it relates to coverage for the actions of the nurses Dr. Cribbs was supervising. Just as with all other ambiguities, these two provisions would have to be reconciled in favor of coverage to the insureds. However, the Court believes additional facts would have to be developed in the Larimore suit as to the specific actions allegedly taken by Dr. Cribbs in order to determine the applicability of the Medical Director Exclusion and whether it bars coverage for those claims under the policy.

## V. CONCLUSION

Based on the foregoing, the Court finds as follows:

- The policy is not void *ab initio*;

- Addo is not a named insured under the policy;

- Exclusion A and Exclusion B are moot as applied to Addo/"Kennedy;"

- Coverage A provides coverage to each individual doctor listed on Endorsement 6;

- Coverage B provides coverage to each individual nurse practitioner or other medical professional listed on Endorsement 7;

- Endorsement 5 only creates a limitation on coverage provided to ASPC for the vicarious liability of other Coverage A Named Insureds;

- Coverage exists for ASPC for the acts and omissions of all Coverage A Named Insureds and Coverage B Named Insureds, to the extent those individuals were acting within the scope of their duties on behalf of ASPC; and

- The Medical Director Exclusion bars coverage for claims alleging ASPC or another named insured under the policy was acting as medical director for West Columbia Nursing Home, Agape Hospice, or AMS when the acts were performed.

The Court, having addressed all issues in this case, hereby issues final judgment in this matter.

IT IS SO ORDERED.

October 21, 2014
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge